AUSA:    Barrington Wilkins          Telephone:  (313) 226-9621
AO 91 (Rev. 11/11)  Criminal Complaint          Special Agent:        Bradley Cioma          Telephone:  (313) 919-1454

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
  v.

Steven James VINING JR.

Case No.    Case: 2:21−mj−30466 - 1
Assigned To : Unassigned
Assign. Date : 9/29/2021
USA V. VINING (CMP)(CMC)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 28, 2021 _____ in the county of _____ Wayne _____ in the
_____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

see attached affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Bradley Cioma, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____ September 29, 2021 _____

_____
*Judge's signature*

City and state: _Detroit, MI_____

Hon. Elizabeth A. Stafford, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bradley Cioma, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1.      I am a Special Agent with the FBI, and have been since May of 2017. I am assigned currently to the FBI Detroit Division's Strike Force Group 1. Prior to working at the FBI, I was a police officer for six years in Plymouth Township, Michigan. I have participated in training related to and conducted dozens of investigations of federal and state violations, including crimes of violence, firearms, and drug trafficking.

2.      The statements contained in this Affidavit are based on my experience as a special agent, information provided by police officers, other agents of the FBI, and other law enforcement personnel, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

3.      The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the information known to law enforcement related to this investigation.

**Probable Cause**

4.      I am currently investigating Steven James VINING JR., date of birth xx/xx/1990, for violations of federal law, specifically, 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances.

5.      On September 28, 2021, detectives from the Michigan State Police were observing the public areas of the Greyhound bus station in Detroit, Michigan. At approximately 12:55 pm passengers were boarding a bus that was headed to southern states.

6.      A male subject wearing a yellow construction vest quickly walked into the bus station carrying a bag and looked around. That subject was then observed walking towards the window of the Greyhound Bus Station that faces the northside of the building where passengers are dropped off and walk into the station. The male then was observed motioning to someone outside with his hands. The male then walked towards the south side of the bus station and exited to board the bus. The bus was already boarded and the last-minute arrival increased Detectives suspicion as this is a common tactic used by narcotics traffickers to limit their time to be observed by law enforcement. Detectives then attempted to make contact with the male subject who was observed carrying a bag. The male subject turned around, set his bag down near the exit door from the interior of the bus station to the exterior where passengers load and said he was going to go get a

ticket. It appeared to Detectives that the subject, later identified as VINING JR., was attempting to distance himself from the bag he arrived at the station carrying and was attempting to avoid contact with Detectives. Detectives walked with the subject and attempted to speak with him as he walked to the ticket counter. VINING JR. displayed nervous behavior, kept repeating the same question and was looking all around the bus station. It appeared VINING JR. had a ticket in his hand. VINING JR. was asked why he left his bag at the exit door from the station where passengers loaded onto the bus. VINING JR. did not have an answer for why he left his bag at the exit door and avoided answering the question. VINING JR. was asked why he needed a ticket when he had one in his hand, which was visually confirmed by Detectives, he claimed he needed to get another one because that one was not accepted. Detectives then detained VINING JR., due to him leaving his bag behind and his overall nervous behavior which is consistent with subjects who are attempting to traffic narcotics when they come in contact with law enforcement. VINING JR. was identified and was asked if he had any illegal narcotics inside his bag and he advised approximately 5 pounds of Marijuana. Detectives then took VINING JR. and the bag he arrived with to the baggage claim area.

7.      On scene was a Michigan State Police Narcotics Canine, who conducted a sniff of the bag and gave a positive indication on the bag VINING

JR. arrived with. A search was then conducted on the bag and located inside was approximately 4 kilograms of suspected illegal narcotics in vacuum sealed packaging and 4 bags of suspected illegal narcotics in plastic bags. In my training and experience, this amount of illegal narcotics exceeds an amount consistent with personal use, and is instead consistent with narcotics trafficking. A TruNarc scan was done on all four packages of the suspected illegal narcotics in the vacuum sealed bags and all indicated Methamphetamine. The four packages were weighed separately: the first package weighed 477 grams, the second package weighed 485 grams, the third package weighed 480 grams and the fourth package weighed 485 grams. Collectively these packages weighed 1,927 grams. A TruNarc scan was done on one of the other separate packages that was in a plastic bag, and it indicated methamphetamine. That package weighed 229 grams. Leaving a total of 2,156 grams of Methamphetamine taken from the bag that VINING JR. was carrying. A Reagent test was done on the three separate bags of suspected illegal narcotics and all tested positive for Fentanyl. The packages weighed 134 grams, 103 grams and 48 grams respectively, leaving a total of 285 grams of fentanyl taken from the bag that VINING JR. was carrying.













8.     VINING JR. was transported to the Michigan State Police Detroit

Detachment and was interviewed by Michigan State Police Detective Matthew

Kiser. VINING JR. was advised of his Miranda rights and consented to an audio

recorded interview. During the interview he admitted to transporting illegal

substances in exchange for clearance of $25,000 in gambling debt for a family

member. VINING JR. advised he was taking the package to Columbus, Ohio, acknowledging he knew he was not supposed to leave the state while he was on felony probation for a weapons offense and acknowledged he had a prior felony drug case out of state. VINING JR. stated he knew it was wrong to try to traffic illegal substances.

### **VINING has the prior felony conviction**

- September 2021 - Felony -  Carrying Concealed Weapon (currently on probation for this offense)

- Felony Warrant out of Huntington, West Virginia for possession of Dangerous Drugs

### **Conclusion**

Based on the above information, probable cause exists to believe that Steven James VINING JR., violated 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances.

Respectfully submitted,

Bradley Cioma, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Honorable Elizabeth A. Stafford
United States Magistrate Judge

Dated:   September 29, 2021